UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**OLAMIDE OSUNDOLU ATANDA**,

    Plaintiff

v.

**RURAL HEALTH NETWORK OF
MONROE COUNTY, FLORIDA, INC.**,

    Defendant.

---

## COMPLAINT

Plaintiff, Olamide Osundolu Atanda, hereby files this action against Defendant, Rural Health Network of Monroe County, Florida, Inc.:

## INTRODUCTION

1. Olamide Osundolu Atanda brings this action against Rural Health Network of Monroe County, Florida, Inc. for violations of the anti-retaliation provisions of the federal Civil False Claims Act, 31 U.S.C. § 3730(h), with a supplemental Florida law claim for violations of the Florida Private Whistleblower Act.

2. Plaintiff alleges that Defendant, through one or more agents and employees, unlawfully fired her after she complained that Defendant was not in compliance with health care laws and/or regulations.

## JURISDICTION AND VENUE

3. At all relevant times herein, Defendant has transacted business in the Southern District of Florida, specifically in Monroe County, Florida.

4. Most or all of the acts set forth herein occurred at Defendant's office in this District, specifically in Monroe County, Florida.

5. Therefore, this is a proper venue under 28 U.S.C. § 1391(b).

6. This Court has federal question/"arising under" jurisdiction under the federal False Claims Act, and supplemental jurisdiction under 28 U.S.C. § 1367.

## PARTIES

7. Plaintiff, Olamide Osundolu Atanda, is a person of the full age of majority, domiciled and residing in Dade County, Florida.

8. Defendant, Rural Health Network of Monroe County, Florida, Inc., is a Florida not-for-profit corporation doing business in Florida.

## FACTS

### A. THE MEDICARE AND MEDICAID PROGRAMS

9. In 1965, Congress enacted the **Medicare Program**, Title 18 of the Social Security Act, under 42 U.S.C. § 1395 et seq., authorizing the U.S. Government to pay for the costs of certain medical services.

10. The U.S. Government, through the Department of Health and Human Services ("HHS"), administers the program.

11. HHS has delegated the administration of the Medicare Program to its component agency, the Center for Medicare and Medicaid Services ("CMS").

12. Part B of the program is a federally funded health insurance system for disabled persons, blind persons, and persons aged 65 and older.

13. The Medicare Program reimburses health care provides for appropriate medical services.

14. Part B generally covers 80% of reasonable charges and items other than hospital expenses, and 100% of clinical diagnostic laboratory services.

15. The **Medicaid Program**, created by Title 19 of the Social Security Act of 1995, codified at 42 U.S.C. § 1195 *et seq.*, was designed to provide similar benefits to qualifying low-income individuals. The U.S. Government funds part of the Medicaid Program in each state. Each state basically funds the remainder.

16. At all relevant times herein, Defendant was a qualified health care provider and government contractor through the Medicare and/or Medicaid Programs.

17. Like all government contractors providing health care services under Medicare and/or Medicaid, Defendants certified to the United States Government, through CMS, that before treating Medicare and/or Medicaid patients and accepting Medicare and/or Medicaid reimbursement, it would operate in accordance with the requirements established by the Secretary of HHS.

18. Under applicable Medicare and Medicaid rules and regulations, health care providers cannot submit claims to either program that were not actually rendered and medically necessary.

C.     **DR. ATANDA AND THE CLINIC'S DENTISTRY SERVICES**

19. At all relevant times herein, Defendant operated a healthcare business in Monroe County, providing a variety of healthcare services to the public, including dental care and treatment, and seeking Medicare and/or Medicaid reimbursement.

20. At all relevant times herein, Plaintiff, Olamide Osundolu Atanda, D.M.D., was (and remains) Board certified in pediatric dentistry.

21. On or about January 4, 2021, Plaintiff began her employment as Defendant's Dental Director, at Defendant's principal place of business: 3706 N. Roosevelt Blvd., Suite C, Key West, Florida 33040.

22. Throughout her employment, Plaintiff reported directly to Defendant's Chief Executive Officer, Rochelle M. Pearson, and to Defendant's Chief Medical Officer (CMO), Dr. Taweh Beysolow.

23. In May 2021, Plaintiff brought to Defendant's attention, through Ms. Pearson and Tim Kroll, Defendant's Chief Financial Officer (CFO), that multiple patients were owed refunds due to over-charges for dental services.

24. These patients were Medicare and Medicaid beneficiaries.

25. On May 21, 2021, for example, Plaintiff wrote an email to Ms. Pearson, copying Mr. Kroll, in which she identified five patients who were overcharged and therefore owed refunds.

26. Mr. Kroll complained about her stance on these matters and, from that date forward, treated her rudely, yelling at her, mocking her, frowning at her, and generally treating her as if she were a problem and not a team player for insisting upon patient refunds for the over-charges.

27. The billing issues continued, but Plaintiff attempted to rectify the situation.

28. On or about August 10, 2021, Plaintiff wrote a RHNMC Dental Board Report in which she stated, in part:

"**Administrative:**

…

Constantly addressing patient billing discrepancies (coding, incorrect insurance information, pre-authorization submission, lack of patient demographics)
Addressed patient complaints in real time
Completion of quarterly Chart Reviews of Direct Reports and Chart Audits for QA/QI

…

      Trained front desk staff on insurance verification, pre-authorization, claims submission, and billing CPT Codes.

      …

29. On or about August 11, 2021, Plaintiff complained by e-mail to Ms. Pearson about Mr. Kroll's harassment of her for speaking up about these patient billing errors and compliance issues.

30. On August 24, 2021, Plaintiff approached Mr. Kroll about a patient who had been wrongfully billed and was therefore in need of a refund. She verbalized the issue and began describing the applicable billing codes to Mr. Kroll. Mr. Kroll expressed disagreement about the need for the refund -- calling it "nonsense" -- and grew furious with Plaintiff, yelling at her. Mr. Kroll told Ms. Pearson that "I've had it up to here!" and either he or Plaintiff had to be terminated. He also stated to Plaintiff: "When you are long gone, I have to explain to the government why I refunded X amount."

31. On or about August 30, 2021, less than a week later, Defendant, through Ms. Pearson, advised Dr. Atanda that she was fired effective November 1, 2021 – 60 days later.

**COUNT 1 OF 2:**
**RETALIATORY DISCHARGE UNDER THE**
**FEDEAL CIVIL FALSE CLAIMS ACT, 31 U.S.C. § 3730(h)**

32. Plaintiff realleges and incorporates the allegations of paragraphs 1 through 31 as if fully set forth herein.

33. Plaintiff complained many times to Defendant, through its agents and/or employees, about its lack of compliance with health care laws and regulations.

34. Plaintiff refused to participate in Defendant's lack of compliance with health care laws and regulations.

5

35. As a proximate cause of these complaints, Defendant discharged Plaintiff.

36. Even if Plaintiff were ever found to have been incorrect about Defendant's violations of one or more health care laws and regulations, it was unlawful to retaliate against her for expressing her good faith belief that Defendant was acting unlawfully.

37. Plaintiff, Olamide Atanda, seeks all damages in the premises from Defendant, and requests that judgment be entered in her favor and against Rural Health Network of Monroe County, Florida, Inc., under 31 U.S.C. § 3730(h), including, but not limited to, "all relief necessary to make the employee whole," double back pay, interest on the back pay, and "compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees.

### COUNT 2 OF 2: RETALIATORY DISCHARGE UNDER THE FLORIDA PRIVATE WHISTLEBLOWER ACT, FLA. STAT. 448.101 *ET SEQ*.

38. Plaintiff realleges and incorporates the allegations of paragraphs 1 through 31 as if fully set forth herein.

39. Plaintiff notified Defendant about the unlawful activities that Defendant was undertaking.

40. Defendant retaliated against Plaintiff in violation of the Florida Private Whistleblower Act (FPWA), Fla. State. 448.101 *et seq*.

41. Specifically, Defendant took "retaliatory personnel action" -- namely discharging Plaintiff -- in violation of Fla. Stat. 448.102(3), soon after she "[o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation."

42. Plaintiff seeks a judgment against Defendant for all damages in the premises, including all relief afforded by Sections 448.103 and 448.104 the FPWA: an injunction restraining

continued violation of the FPWA; compensation for lost wages, benefits, and other remuneration; "any other compensatory damages allowable by law"; and reasonable attorney's fees, court costs, and expenses.

## JURY DEMAND

43. Plaintiff demands a jury trial for all issues so triable.

**JUNE 8, 2022**

                                            Respectfully submitted:

                                            <u>Steven F. Grover</u>
                                            s/ Steven F. Grover
                                            Steven F. Grover, PA
                                            101 N. Riverside Dr., Suite 203
                                            Pompano Beach, FL 33062
                                            Tel.: 954-290-8826
                                            E-mail: stevenfgrover@gmail.com
                                            *Plaintiff's Counsel*